# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ELIZABETH FAIRLEY,**
**individually and on behalf of**
**all others similarly situated,**

    **Plaintiff,**

    v.

**SEARCH WIZARDS, INC.,**

    **Defendant.**

Civil Action No. 8:22-cv-01905

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff Elizabeth Fairley ("Plaintiff") and Search Wizards ("Defendant" or "Search Wizards") (together, the "Parties"), through their undersigned counsel, file this Joint Motion for Approval of Settlement Agreement. In support thereof, the Parties state as follows:

1. On August 19, 2022, Plaintiff filed this lawsuit as an FLSA collective action pursuant to 29 U.S.C. § 216(b) in the Middle District of Florida, alleging Defendant failed to properly pay Plaintiff her overtime wages for all of the hours she worked. *See* ECF. No. 1 ("Compl.")

2. Defendant filed an Answer to the Complaint on September 19, 2022, in which Defendant denied Plaintiff's allegations that Plaintiff and others were paid improperly, and in which Defendant also asserted multiple affirmative defenses. *See*

ECF No. 14.

3. Plaintiff served her First Set of Document Requests and Interrogatories on November 11, 2022. Search Wizards served Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories on December 12, 2022, and its Answers and Objections to Plaintiff's First Set of Documents Requests on December 13, 2022. Subsequently, the Parties exchanged discovery.

4. On December 7, 2022, the Court ordered the Parties to mediation on or before February 14, 2023. *See* ECF No. 24.

5. On December 16, 2022, a Notice of Mediation was filed with the Court setting forth the time that Mediation was to occur, which was February 1, 2023. *See* ECF No. 26.

6. On January 30, 2023, the Parties requested the Court to extend the deadline to mediate due to Plaintiff's Motion to Compel (ECF No. 27) and Defendant's Motion for Protective Order (ECF No. 28). On February 2, 2023, the Court ordered the Parties to mediation on or before February 22, 2023. *See* ECF No. 33.

7. During the February 20, 2023, court-mandated mediation, and following the exchange of discovery, including written discovery in the form of interrogatories and document requests, the evaluation of the facts and law, numerous meet and confer calls regarding discovery obligations, the underlying facts of the

case and data, and continued arm's length negotiations, the Parties reached a settlement in principle for Plaintiff's individual claims. Indeed, the Parties continued to negotiate in good faith to prepare a Settlement Agreement for the Court's consideration.

8. On March 6, 2023, the Parties executed a Settlement Agreement and Full and Final Release of Claims ("Settlement Agreement," "Settlement," or "Agreement"). *See* Exhibit A (attached hereto).

9. While Defendant denies any wrongdoing in connection with Plaintiff's employment and further denies any violation of the FLSA, and while Plaintiff ccontends that she was not appropriately compensated for all hours worked while employed by Defendant, the Parties acknowledge: 1) that there are serious questions of law and fact in dispute; 2) the substantial risks associated with litigating these complex wage and hour claims; 3) the difficulties associated with successfully establishing their respective positions before a jury; 4) the amount of time and resources involved in litigating these claims; and 5) the benefits of an expeditious resolution of claims and the value it provides to the Parties.

10. As a result, Plaintiff has entered into the Settlement Agreement with Defendant. The Settlement provides Plaintiff with a settlement award payment that by Plaintiff's Counsel's calculations, represents approximately 91% of Plaintiff's

actual unpaid overtime compensation as calculated by Plaintiff's Counsel.[1] The Settlement also provides reimbursement of Plaintiff's Counsel's attorneys' fees and costs, which outlined below, are a fraction of the actual fees and costs incurred in the litigation. Notably, these two payments were negotiated separately. Specifically, the Parties discussed and separately negotiated the amount to be paid to Plaintiff's Counsel for attorneys' fees and costs after the Parties agreed to Plaintiff's settlement amount. Defendant has agreed to pay Plaintiff's Counsel $43,000.00 for fees and costs. Additional terms of the Settlement are set out in the Settlement Agreement.

11. Claims arising under the FLSA can be settled or compromised by employees in limited circumstances: when the Secretary of Labor supervises an employer's payment of unpaid wages to employees pursuant to 29 U.S.C. § 216(c) or when a district court approves a settlement agreement pursuant to 29 U.S.C. § 216(b). As a result, and by requirement of the Parties' agreement, the Settlement Agreements requires Court approval to become effective.

12. Courts in the Eleventh Circuit rule that an employee may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court enters a judgment approving the

---

[1] Plaintiff's unpaid overtime was calculated to be $35,340.00, based on the following methodology: (regular rate) * 1.5 * (hours worked – 40) * (number of workweeks deficient of overtime payments worked during statute of limitations period). If successful on all her claims, the Court also could have awarded liquidated damages.

settlement. *See Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a *bona fide* dispute." *Id*. at 1354–1355. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354. In determining whether the settlement is fair and reasonable, the Court may consider the following factors:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of Plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See*, *e.g.*, *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 605-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). "In reviewing FLSA settlements under *Lynn's Food*, courts 'should be mindful of the strong presumption in favor of finding a settlement fair.'" *Crabtree v. Volkert, Inc.*, No. CIV.A. 11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013) (citation omitted); *Wingrove v. D.A. Techs., Inc.*, No. 1:10-CV-3227-HLM-WEJ, 2011 WL 7307626, at *2 (N.D. Ga. Feb. 11, 2011) ("strong presumption" that FLSA settlements are fair and reasonable).

13. The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires judgment and evaluation by the attorneys for the parties based upon a comparison of the terms of the compromise with the likely rewards of litigation. Courts have noted that the opinion of experienced counsel and the parties supporting the settlement is entitled to considerable weight. *See, e.g., Crabtree*, 2013 WL 593500, at *3 (court's conclusion that settlement is reasonable is "reinforced by the fact that plaintiffs were ably represented during the settlement negotiations by capable, experienced counsel with extensive experience in complex employment law cases."); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case that "the endorsement of the parties' counsel is entitled to significant weight").

14. Here, the settlement negotiations between the Parties leading to these agreements were arm's-length negotiations of a *bona fide* dispute concerning complex issues under the FLSA. A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354. *Reams v. Michael Angelo Rest., Inc.*, No. 7:19-CV-53 (HL), 2019 WL 6898656, at *2 (M.D.

Ga. Dec. 18, 2019).

15. Here, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the amount of time that Plaintiff spent performing her work, and whether Plaintiff and/or Defendant would appeal a myriad of legal or factual determinations, including collective action treatment, liability, and damages. Ultimately the Settlement represents a compromised resolution on these issues, as well as others, that accounts for the risks that the Parties would face if the case proceeded in litigation and provides a certain, immediate and meaningful payment to Plaintiff and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. *See* Declaration of Camille Fundora Rodriguez ("Rodriguez Decl.") ¶¶ 15–16.

16. "The 'likelihood and extent of any recovery from the defendants absent . . . settlement' is another important factor in assessing the reasonableness of a settlement." *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1371 (N.D. Ga. 2019.) A trial on the merits would involve significant risks based on the disputed issues identified in Paragraph 9, *supra*. In addition, as in any FLSA case, there was a risk that the Plaintiff would not succeed in obtaining conditional certification and maintaining a collective through trial. While each party believes the case was very strong in their favor, the outcome of the litigation was far from certain, and would

require significant factual development. Moreover, any verdict at trial could be delayed based on any appeals. These likely risks attending to Plaintiff's claims and the certain delay and expense of continued litigation further counsel in favor of final approval of this Settlement.[2]

17. The court considers "the degree of case development that [ ] counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *George*, 369 F. Supp. 3d at 1370. "At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Id.* at 1371 (citation omitted). Here, the Settlement was reached after thorough investigation and analysis of the facts and law related to the claims, continuous development of the facts through interviewing Plaintiff, the exchange of discovery, including written discovery in the form of interrogatories and document requests, the evaluation of the facts and law, numerous meet and confer calls regarding the facts and data, and arm's length negotiations. *See* Rodriguez Decl. ¶ 17.

---

[2] *See Lockwood* v. *CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126, at *9 (M.D. Fla. May 3, 2019) ("Without a settlement, the parties would have to proceed to trial, and the plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement."); *Crabtree*, 2013 WL 593500, at *3 (finding FLSA settlement reasonable, because even if plaintiffs had prevailed in proving liability, defendant may have prevailed in demonstrating good faith, such that no liquidated damages award was appropriate).

18. The Parties were each represented by experienced counsel. The Parties jointly assert that the Settlement Agreement represents a fair and equitable resolution of Plaintiff's wage and hour claims and are in the best interests of all Parties. Additionally, Plaintiff asserts that the settlement amount to Plaintiff provides Plaintiff with a settlement award payment that by Plaintiff's Counsel's preliminary calculations, represents approximately 91% of Plaintiff's actual unpaid overtime compensation as calculated by Plaintiff's Counsel. Rodriguez Decl. ¶ 14. The Plaintiff asserts that Settlement provides an excellent result to Plaintiff. The Settlement provides Plaintiff a certain, substantial and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. *Id*. at ¶ 15. Accordingly, the Parties respectfully submit that their informed conclusion that the Agreement is fair and equitable should be afforded considerable weight by the Court when analyzing whether to approve the settlement.

19. The Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. The Settlement Agreement furthers the purposes of the FLSA by providing Plaintiff with substantial recovery for her unpaid wages and overtime she may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining

power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency . . .").

20. The Settlement Agreement also provides reimbursement of Plaintiff's Counsel's fees and costs. Under the FLSA, Plaintiff's Counsel are entitled to reasonable attorneys' fees and costs to compensate them for their work in recovering unpaid wages under the FLSA. *See* 29 U.S.C. § 216(b). Importantly, there is no proportionality test applied to the award of attorneys' fees and costs under either the FLSA. *See, e.g.*, *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir. 1983), disapproved of on other grounds by *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) (upholding a $100,000 attorneys' fees award for an FLSA wage recovery of $18,455); *Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 610–11 (7th Cir. 2014) ("Fee-shifting statutes […] are designed to prevent the potentially high costs of litigation from stifling justified claims."); *Hall v. Siemens VDO Auto. Elecs. Corp.*, No. 5:06-CV-1208-SLB, 2014 WL 1329553, at *10 (N.D. Ala. Mar. 31, 2014), *appeal dismissed* (June 30, 2014) ("While reduced fee awards are proper in many cases, "[f]ee awards should not simply be proportionate to the results obtained," especially in FLSA cases, as fee awards in FLSA cases are often greater than the amount recovered by the plaintiff."); *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2015 WL 1746375, at *16

(D. Minn. Apr. 13, 2015) (same). Plaintiff's Counsel's requested fees and costs were carefully negotiated by the Parties separate from the wage payment to Plaintiff. "When parties engage in arm's length negotiations to arrive at a mutually agreeable amount of attorneys' fees, the Court should give considerable weight to the parties' agreement." *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019).

21. District courts in this Circuit have held that the court's scrutiny of the reasonableness of the fees is unnecessary in an FLSA settlement where "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).[3] Here, the fees

---

[3] *See also Urbas v. Nutritious Lifestyles, Inc.*, No. 3:19-cv-855-J-34PDB, 2020 WL 264686, at *3 (M.D. Fla. Jan. 2, 2020) ("If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness"); *Campbell v. Pincher's Beach Bar Grill, Inc.*, No. 2:15-cv-695, 2017 WL 3700629, at *4 (M.D. Fla. Aug, 24, 2017) ("If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."); *Wing v. Plann B Corp.*, No. 6:11-cv-1499, 2012 WL 4746258, at *4 (M.D. Fla. Sept 17, 2012) (declining to examine reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel.").

were separately negotiated based on Plaintiff's Counsel's lodestar. For this reason, the Court need not separately evaluate the reasonableness of the fee award in approving the settlement.

22. The agreed-upon amount requested for the award of Plaintiff's Counsel's fees and costs is reasonable. The attorneys litigating this case on behalf of Plaintiff have significant employment law experience. *See* Rodriguez Decl., Exhibit A. Plaintiff's Counsel assumed a risk in taking on this case: They took the case on a contingency basis, and were prepared to invest time, effort, and money over a period of years with no guarantee of any recovery. Rodriguez Decl. ¶ 18. Plaintiff's Counsel spent time investigating the claims and interviewing the Plaintiff; drafting the complaint; researching issues in response to Defendant's Answer and asserted defenses; engaging in settlement negotiations; engaging in formal written discovery; reviewing data relating to settlement discussions; performing a damages analysis and analyzing Defendant's damages analysis; and finalizing the formal settlement agreement. *Id*. at ¶ 19.[4] Plaintiff's Counsel's requested attorneys' fee of $43,000.00 is *less* than their actual current lodestar of $142,126.00, calculated at their customary billing rates. *Id*. at ¶ 25.[5] The proposed attorneys' fees and costs

---

[4] Plaintiff's Counsel maintains detailed billing records and can submit the same to the Court upon request.

[5] Plaintiff's Counsel have attached the Declaration Camille Fundora Rodriguez and the time and costs summary from Janet Varnell, which detail the time worked by

award of $43,000.00 represents a significant reduction – only approximately less than 30% of Plaintiff's Counsel's actual current lodestar after expenses are first deducted. *Id*. "This fact, standing alone, strongly suggests that the amount of fees requested here are reasonable and fair." *Arby's*, 2019 WL 2720818, at *3. *See also, Huff v. Bobcat N. Am., LLC*, No. 619CV861ORL37DCI, 2021 WL 268356, at *4 (M.D. Fla. Jan. 25, 2021) (parties' representations of separate negotiation of attorneys' fees adequately establishes the reasonableness of the fees under the Agreement). Moreover, the requested fee does not account for all of the work that will be necessary to bring this Settlement to completion, which will further increase the actual lodestar (but not the fee), thereby further reducing the fee as percentage of lodestar.[6] Plaintiff's Counsel's costs total $1,238.16 and are detailed in Plaintiff's Counsel's accompanying Declaration. *See* Rodriguez Decl. ¶¶ 22–34. These costs include reasonable out-of-pocket expenditures. *See*, *e.g.*, *Reams*, 2019 WL 6898656,

---

their firms on this lawsuit, along with the hourly billing rates of the legal professionals who were assigned to the case. Plaintiff's Counsel has expended over 262.3 hours and incurred attorneys' fees in the total amount of $142,126.00 from inception of this litigation to date, not including the additional work that will be necessary to finalize the settlement and bring this case to a conclusion. Plaintiff's Counsel's hourly rates are reasonable and have been approved by Courts across the country. *See* Rodriguez Decl. ¶¶ 22–33.

[6] *Su v. Elec. Arts, Inc.*, No. 6:05-cv-131, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006) (finding negotiated fee reasonable where fee sought was *less* than actual lodestar and uncontested by defendants); *Reams*, 2019 WL 6898656, at *4 (awarding requested fee which was *less* than the lodestar, because "[t]he lodestar is 'presumed to be the reasonable fee,' and therefore, the settlement's proposed fee award, near the lodestar figure, is also reasonable").

at *4 (reimbursing counsel's payments for filing and mediation fees); *George*, 369 F. Supp. 3d at 1383 (reimbursing counsel for expenses paid as reasonable and necessary, noting that Counsel had lost the use of that money during the time of the litigation).

23. The expenses reflected in the accompanying Declaration are of the type typically billed by attorneys to paying clients and include court costs and computerized legal research. All expenses were reasonable and necessary for the prosecution of this litigation. Plaintiff's Counsel advanced these costs, with the significant likelihood of no recovery. These costs are included in the negotiated fees and costs and should be approved as reasonable.

Thus, based on the foregoing, the Parties respectfully request that the Court approve the Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. and dismiss the action with prejudice as to Plaintiff and without prejudice as to any potential collective member as defined in Plaintiff's Complaint, pursuant to the terms of the Parties' Settlement Agreement.

Dated: April 10, 2023

Respectfully submitted,

By: */s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez
Alexandra K. Piazza
Reginald L. Streater
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4620
crodriguez@bm.net
apiazza@bm.net
rstreater@bm.net

By: */s/ Janet Varnell*
Janet Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL 33602
Tel: (352) 753-8600
Fax: (352) 504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
kstroly@vandwlaw.com

*Attorneys for the Plaintiff*

By: */s/ Christine Sensenig*
Christine Sensenig
SENSENIG LAW FIRM, P.A.
1515 Ringling Blvd, Ste 230
Sarasota, FL 34236
Tel: 941-953-2828
Fax: 941-953-3018
csensenig@senseniglawfirm.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties registered to receive electronic notice.

/s/ *Camille Fundora Rodriguez*
Camille Fundora Rodriguez